### SIBLEY & CO. v. YOUNG & NAPIER.

1. One partner is not bound by a sealed instrument executed by his copartner in the name of the firm, unless it is shown by direct testimony or from circumstances that he had previously authorized such an instrument, or had subsequently ratified it.

2. Where an instrument, as *e. g.*, a single bill, requires a seal, the seal cannot be treated as surplusage; nor can a partner be held liable on a sealed note executed by his copartner because that he would be liable if the seal had been omitted.

3. This court cannot take notice of the effect of the laws of another State upon a contract in suit here, unless those laws be properly proved.

4. There is no legal presumption that a partner has authority to bind his copartner by a sealed instrument. Whether there was previous authority or subsequent ratification, is a question of fact for the jury.

5. A partner does not ratify a sealed note in the firm-name, executed by his copartner, by acknowledging his liability thereon, unless he knew at the time that it was a sealed note.

6. Where action is brought against a firm on sealed notes, calling them promissory notes, an amendment alleging indebtedness on the account for which the notes were given does not substantially change the claim, and should be allowed.

7. A refusal to permit an amendment of the complaint is not ordinarily appealable; but where the refusal is based upon a legal ground, it is.
8. Plaintiff's right to amend should not be affected by the fact that his motion was made after non-suit ordered, and not renewed after the order of non-suit was vacated at the same term.

Before WALLACE, J., Abbeville, October, 1885.

The opinion sufficiently states the case.

*Messrs. Perrin & Cothran,* for appellants.

*Mr. Samuel C. Cason,* contra.

April 19, 1887.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The plaintiffs brought this action upon two single bills, commonly called sealed notes, for one thousand dollars each, signed by the defendant, Napier, in the firm-name of Young & Napier.   The defendant, Napier, put in no answer, and judgment by default was taken against him.   The defendant, Young, answered, and while admitting the partnership between himself and Napier, denied his liability on the notes, alleging that they were executed by Napier without his knowledge or authority.   So that the only issue in the case was, whether Young could be made liable on the single bills signed by his partner in the firm-name.   The plaintiffs offered testimony tending to prove that the notes were given to secure money advanced by the plaintiffs to the defendants to be used in carrying on their business, some of which had been advanced before the notes were executed and the balance afterwards; that Young had in several conversations admitted his liability on the notes, and that after he was informed of the execution of the notes he expressed his gratification at the arrangement that had been made, but that Young was not present when the notes were signed by Napier in the firm-name.

At the close of the plaintiffs' testimony, counsel for respondent, Young, moved for a non-suit upon the ground that the action being based upon notes under seal signed by Napier in the partnership name without the authority of Young, they were not

binding upon him, and the motion was granted. The plaintiffs then moved to amend their complaint, which, it seems, alleged that the notes were promissory notes, and not sealed notes, "by declaring upon the open account which was secured by the notes." This motion was refused "upon the ground that such an amendment would entirely change the cause of action," and exception to such ruling was duly taken and noted.

The order for non-suit was, after argument, set aside, and the trial proceeding, Young was offered as a witness and testified that he had never admitted his liability upon the notes sued on, and denied any information as to the execution of the notes by Napier. The Circuit Judge charged the jury, in substance, that while one partner is the agent of his copartner, and as such has unlimited authority to bind his copartner in any transaction within the scope of the partnership business, yet that the execution of a note under seal is not within such scope, and therefore the defendant, Young, would not be liable on these notes, unless he had previously authorized Napier to execute them, or had subsequently ratified his act in so doing.

Inasmuch as there was no pretence that Young was present at the time the notes were signed by Napier, or that he had previously authorized him to execute a note under seal, the real question in the case was, whether Young had subsequently ratified the act of Napier in executing the notes under seal. Upon this subject the jury were instructed in the following language: "If one does an act for the benefit of another, and that other receives the benefit of that act, then that is a ratification of the act of the man who assumes to be his agent, although he never appointed him to do it. Now, did Young derive the benefit of the action of Napier, and did he know of it? Because a man cannot be bound when he is not aware of the act, a very necessary and essential-constituent being the knowledge of what has been done." The jury rendered a verdict in the following form: "We find for defendant, because S. O. Young did not ratify the signature of Young & Napier," and the plaintiffs appeal upon the following grounds:

"1st. That the judge erred in refusing to charge as requested, 'That the act, if done by an unsealed instrument, would have

been within the scope of the business of Young & Napier, and the powers and authority belonging to each partner, though done by a sealed note, would bind both partners.'

"2nd. That he erred in refusing to charge, 'That when one partner is the only active member of a firm, and he makes arrangements with a factor for money to transact the business of the firm, giving the sealed note of the partnership firm therefor, each member is bound thereby.'

"3rd. That he erred in refusing to charge, 'That if the jury believe that the defendant, S. O. Young, acknowledged to plaintiffs his liability upon the notes sued upon, subsequent to their execution, he is liable.'

"4th. That he erred in charging that it was necessary that S. O. Young should have seen or been informed that the notes sued on were sealed notes before any subsequent acknowledgment could amount to a ratification of the contract entered into between plaintiffs and his co-defendant, W. H. Napier.

"5th. That he erred in charging that the signing of the sealed notes sued on in the partnership name by W. H. Napier, whether it was done to raise money for the partnership business or not, was beyond the scope of the partnership business, and could not bind S. O. Young, unless subsequent to the execution he had ratified them, knowing them to be sealed notes.

"6th. That he erred in refusing to charge, that if there is no evidence to the contrary, the presumption is that the only active partner who signs a sealed note in the firm-name for the purpose of raising money for the purposes of the firm was authorized so to do.

"7th. Because his honor erred in refusing to allow plaintiffs to amend their complaint by adding a count upon the open account which was secured by the notes sued upon, on the ground that to so amend would be to entirely change the cause of action, which is not permitted under the code."

While it is quite true that the many and marked distinctions which at one time existed between notes under seal and those not under seal, seem to be gradually disappearing under what is called the progress of the age, yet amongst those distinctions which yet survive, it so happens is the one which prevents one

partner from binding his copartner by a note under seal, to wit, that a seal of itself imports a consideration. We are therefore compelled to regard it as the settled law that one partner, as a general rule, cannot bind his copartner by an instrument under seal; and that he can only be made liable upon such an instrument by proving to the satisfaction of the jury, or other trier of questions of fact, that he had either authorized the execution of such an instrument or had subsequently ratified it. Either of these facts, previous authority or subsequent ratification, may be proved, like any other fact in issue in a cause, as well by circumstances from which the existence of the fact to be proved may be legitimately inferred, as by positive and direct testimony. *Dunbar* ads. *Fleming,* 2 *Hill,* 532; *Lucas* v. *Sanders,* 1 *McMull.,* 311; *Fant* v. *West,* 10 *Rich.,* 149; *Stroman* v. *Varn,* 19 *S. C.,* 307.

These being the principles of law applicable to the case under consideration, let us examine the exceptions and see whether they have been violated by the Circuit Judge, either in his refusals to charge, or in the instructions which he did give to the jury. The first exception is based upon the idea that, inasmuch as the debt to the plaintiffs could have been secured by a simple promissory note, which either partner would have had the authority to execute by reason of the relations growing out of the partnership, without proof of previous authority or subsequent ratification, the fact that a seal was placed on the note was immaterial and may be regarded as surplusage; and the principal authorities cited to sustain this position are *Harrison* v. *Sterry,* 5 *Cranch,* 289; *Gibson* v. *Warden,* 14 *Wall.,* 244; *Robinson* v. *Crowder,* 4 *McCord,* 519; and *State* v. *The Spartanburg & Union Railroad Company,* 8 *S. C.,* 129.

But an examination of those cases will show that the extent to which they go is, that where the instrument upon which it is sought to make a partner liable by reason of its having been executed by his copartner, is of such a character as that it does not require a seal to give it validity, and is within the scope of the partnership business, then the fact that a seal was unnecessarily placed upon it will not deprive it of its binding force on both partners, as the seal may be disregarded as surplusage. For

example, if one partner in executing a receipt for money due the firm should unnecessarily affix a seal to the name of the firm, this will not deprive the paper of its binding obligation upon all the members of the firm. But when the instrument upon which the action is brought against the partnership is of such a character as to require that it shall be executed under seal, then the signing of the partnership name thereto, with a seal attached, by one partner, will not bind his copartner without previous authority or subsequent ratification.

Here, the instrument sued upon is a single bill, which the law requires shall be executed under seal, and hence the proposition contended for by the appellants in their first exception cannot be sustained. It is very true that the plaintiffs might have taken a promissory note to secure the payment of the amount due them by defendants, which Napier would have had authority to give in the name of the firm, but they chose to take a different security—one of such a character as Napier had no authority to give—and when they come to enforce such security, they cannot avail themselves of the protection which the law would have afforded them if they had seen fit to take a different security. Indeed, if the proposition contended for by appellants should be admitted, we do not see how the question whether a partner could be made liable on a sealed note, the execution of which he had not authorized or ratified, could ever arise; for it might always be said in such a case that the debt secured by the sealed note might have been evidenced by a promissory note, and therefore all the partners should be held liable. The question turns upon what *has been done*, and not upon what *might have been done*. The plaintiffs elected to secure their claim by an instrument of such a character as required a seal, and under the well settled law, when they bring their action on such a paper, they cannot recover except upon the proof that it was executed by proper authority or has been subsequently ratified.

Something was said in the argument as to the laws of Georgia, where this contract was entered into, having been so changed by statute as to convert sealed notes for the payment of money to bearer or order into negotiable notes, but as there is no evidence before us of any such statute of our sister State, of which there

is an appropriate mode of proof, it is not necessary for us to consider what would be the effect here of such a change in the law there.

The second and sixth exceptions may be considered together. The charges there requested could not have been given by the Circuit Judge without invading the province of the jury. There certainly is no legal presumption that the execution of a note under seal by one copartner, even though he may have the entire management of the business, is the act of the partnership; in fact, the rule is the other way, and, as we have said, the other partner can only be made liable by proof of previous authority or subsequent ratification, the sufficiency of which is to be determined by the jury and not by the judge.

If the third exception stood alone, and should be considered apart from the whole tenor of the charge, it would unquestionably be well founded; for it is certainly true that if Young acknowledged his liability upon the notes sued on, subsequent to their execution, they being sealed notes, that would be the highest evidence of ratification, and he would clearly be liable. But it will be observed that the Circuit Judge did not refuse to charge as there requested; on the contrary, he did so charge, with the qualification that "if Young, knowing the nature of these notes, acknowledged his liability upon them, he is liable." Construing this language in connection with the whole tenor of the charge, as the well settled rule requires us to do, it simply means that if Young, knowing these notes to be sealed notes, acknowledged his liability upon them, then he can be made liable in this action, and to this there can be no valid exception. One can scarcely be said to have ratified an act until he knows what the act is. It is not difficult to conceive of a case in which a partner might be quite willing to acknowledge his liability for a debt for which his copartner has assumed, without authority, to execute a sealed note in the name of the firm, and at the same time repudiate any liability on the note; for if he acknowledged his liability on that note, such acknowledgment might be used, as in the case of *Fant* v. *West, supra,* to fix his liability on other notes under seal, of which he knew nothing whatever.

The fourth and fifth exceptions are disposed of by what we

have already said, and we do not see any well founded exception to the judge's charge.

The only remaining inquiry is that raised by the seventh exception, whether there was any error in refusing leave to amend upon the ground that the amendment asked would substantially change the cause of action. The provisions in the Code (section 194) with respect to amendments are very liberal, the only limit seeming to be that the amendment shall not substantially change the claim or defence; and therefore the inquiry in such cases should be, does the proposed amendment "change substantially the claim or defence"? It will be observed that the language of the statute is not simply change, but *substantially* change, the claim or defence, and hence any merely formal or slight change does not appear to be prohibited.

In this case the claim of the plaintiffs was to recover the money which they had advanced to the defendants, and in their complaint they based their claim upon the allegation that the defendants had by their *promissory* notes bound themselves to pay certain sums of money, and at certain times therein mentioned, which allegation they attempted to sustain by the introduction of certain *sealed* notes, signed by the defendant, Napier, in the firm-name of Young & Napier, which they undertook to prove had been acknowledged and ratified by the respondent, Young. Their substantial claim or cause of action was their alleged right to have a return of their money, and the alleged violation of this right by the defendants, to whom it had been advanced, and the fact that the plaintiffs claimed that such alleged right and corresponding duty of the defendants was evidenced by sealed notes, cannot affect the real nature of their claim, or forbid them from making other allegations in support of such claim.

In the case of *Tarrant* v. *Gittelson* (16 *S. C.*, 231), the plaintiff in his complaint simply alleged that the defendant was indebted to him in a sum specified for work, labor, and services, without any allegation of a special contract, and upon his offer to adduce testimony tending to show a special contract, which was objected to upon the ground that there was no allegation in the complaint of any special contract, the Circuit Judge allowed the

plaintiff to amend by inserting such allegation and received the testimony. Upon appeal this court held that there was no error in granting such leave to amend under section 196 of the old Code, now section 194. It seems to us that, in principle, there is no distinction between that case and this. There the plaintiff, having first based his action upon what was called under the former practice a *quantum meruit*, was allowed to amend by alleging a special contract relating to the same services; while here the plaintiffs, having first based their claim upon a special contract, now ask to be allowed to insert allegations that the same money claimed under the special contract was had and received by the defendants. It is the same debt which is sought to be recovered by the same plaintiffs from the same defendants, and the only difference is in the ground upon which the liability is based.

We do not think, therefore, that the amendment asked for would "entirely change the cause of action," as held by the Circuit Judge, nor was it an amendment which would "change substantially the claim," and hence it was an amendment which was permissible under section 194 of the Code, and should have been granted.

It is true that applications for amendment are addressed to the discretion of the Circuit Judge, and hence the granting or refusing of such applications is not ordinarily appealable (*Trumbo* v. *Finley*, 18 *S. C.*, 315, and the cases therein cited); but when the refusal is based upon a legal ground, as in this case, and not upon discretion, then the matter does become appealable. Here we think that the Circuit Judge erred in refusing to grant leave to amend upon the ground stated, and therefore the case must go back for a new trial, with leave to the plaintiffs to renew their motion to amend.

Whether the implied contract arising from the advance of the money by the plaintiffs to the defendants has been merged into, or extinguished by the execution of, the sealed notes, is a question which we are not now at liberty to consider.

The fact that the motion for leave to amend was made after the motion for non-suit was granted, and before the order of non-suit was set aside, ought not to affect the plaintiffs' motion to amend.

It did not appear that any judgment of non-suit was actually entered, and until that was done the case could not be regarded as legally ended.    At all events, the Circuit Judge still retained the control of the case, and when he immediately afterwards set aside the order of non-suit, the case was then in a condition for amendment, and to renew the motion then would have been a mere empty form, wholly unnecessary, as the ground upon which the motion to amend had been refused still existed.

The judgment of this court is, that the judgment of the Circuit Court be reversed, upon the ground stated, and the case be remanded to that court for a new trial, with leave to the plaintiffs to renew their motion to amend their complaint as applied for.