## 14988

LONG v. CAROLINA BAKING CO. *ET AL.*

(8 S. E. (2d), 326)

226

June, 1938.

*Messrs. Hicks & Johnston,* for appellants,

*Messrs. Price & Poag* and *W. A. Bull,* for respondent,

December 16, 1939.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This case has been before the Court heretofore (No. 1753) in which an opinion was filed July. 8, 1939. The defendants, who were appellants, filed a petition for rehearing, which was granted, and rehearing had at the October, 1939, term of this Court.

The opinion filed July 8, 1939, is hereby withdrawn and this opinion is filed instead thereof.

The action is brought by Joe Long, as administrator of the estate of Tom Long, deceased. It appears from the al-

legations of the complaint that Tom Long died from injuries received in a collision between the automobile which he was driving and a truck, alleged to be the property of Carolina Baking Company, driven by Haskell Kilgore, a resident of Greenville County, S. C.; that the collision occurred at a point in North Carolina on the highway leading from Greenville, S. C., to Hendersonville, N. C.; that defendant's truck was being operated on the wrong side, the left-hand side, of the highway, and without having it under control, contrary to and in violation of the laws of the State of North Carolina.

For answer, the defendants interposed a general denial; and that the Carolina Baking Company had transferred all of its assets to the Columbia Baking Company, had been dissolved and was not then, or at the time of the collision, in business. They admit that there was a collision between the Long automobile and the truck, but deny that they were responsible for it. Further answering, they allege that Mr. and Mrs. Joe Long and Tom Long were engaged in a joint enterprise, and the accident was caused by their negligence in the particulars set forth in the answer.

The case was first heard by Judge Mann, with a jury, at the October, 1938, term of the Court of Common Pleas for Greenville County and again at the November term of that Court, and resulted in a verdict for the plaintiff in the sum of $10,000.00 actual damages. This appeal followed.

The appellants base their appeal upon 16 exceptions, which will be hereinafter considered as they are grouped and presented by appellants.

November 15, 1938, before the trial which began November 21, 1938, defendants' attorneys served on plaintiff's attorneys a notice in the following form:

"Please Take Notice: That the defendants, not having raised the following objection by demurrer or answer, now file their notice of objection to the complaint upon the ground that the complaint does not state facts sufficient to

constitute a cause of action, because the complaint shows that it is based upon the laws of North Carolina, and such laws have not been alleged in the complaint, as required by the law of South Carolina."

After the reading of the pleadings, counsel for defendants addressed the Court thus:

"At this time we move to exclude the evidence in the case because there is no cause of action set up in the complaint, the complaint being apparently under some form of Lord Campbell's or death statute of North Carolina, which is not pleaded in the complaint * * *."

The Court:

"I will state substantially what my former ruling was in order that it may appear in the present case, having carefully examined the complaint, being of the opinion that the statute being referred to with sufficient definiteness as to put it before the Court, that the Statute under which this case is being tried is sufficiently pleaded and, therefore, the motion is overruled."

The language of the Court, to wit, "I will state substantially what my former ruling was," has reference to a former trial of this case before him, held at the October, 1938, term of the Court of Common Pleas for Greenville County.

Exceptions 1, 2, 3 and 4 raise the question whether the North Carolina law, which it is conceded must govern the case, is sufficiently pleaded. On this issue, it is true, there is considerable diversity of opinion and authority, and there is much to support the ruling of Judge Mann in this case. It may, however, be admitted that there is much, perhaps the weight, of authority to the effect that the better justice is to plead the foreign law, relied on, in full.

However, that issue has become an academic one in this appeal, for the reason that on the first trial of this case the same issue was presented to the Court, in an effort to exclude the evidence in the case because the complaint does not state facts sufficient to constitute a cause of action, because the complaint shows that it is based upon the laws of

North Carolina and such laws have not been alleged in the complaint, and was overruled. That case resulted in a mistrial and there was no appeal from that.

Appellants contend that this ruling is not properly before this Court. We take the following from appellants' argument:

"From the entire record, there was no mention, either by respondent, the trial Judge, or anyone else, that the questions presented had been previously decided. .

"2. Respondent's contention was never presented to nor passed upon by the trial Judge.

"3. The transcript was not prepared with such idea in mind. Therefore, it is wholly inadequate to enable the parties to present or argue this question.

"4. The transcript does not show what questions were presented upon the first trial, in what manner they were presented, nor how they were disposed of.

"5. There was no motion to sustain the verdict or judgment on this ground included in the transcript.

"6. Respondent did not so much as hint at this contention in their printed argument.

"7. The first suggestion regarding the point came after appellant's oral argument in this Court when some typewritten notes were argued and presented.

"8. It is absolutely impossible, with the record in its present shape, for appellant or respondent to present this point to the Court to pass upon it."

We do not think the objection is well founded. There is ample and plain reference in the record to explain and make plain what occurred in the first trial.

The transcript of record in the present appeal was prepared by attorneys of the appellants. In it, page 2, occurs the following:

"Upon call of the case, but before drawing the jury, appellants moved to amend the pleadings by striking all reference to punitive damages or anything in support thereof,

because at the last trial the plaintiff abandoned that claim and asked that it not be submitted to the jury.

"(Note: In explanation of the reference just made to the 'last trial': This case was first tried beginning October 17, 1938, before Judge Mann and a jury.) The result was a mistrial. * * *."

Can appellants successfully contend that there is no such reference to that trial and what occurred there as will deny to respondent any reference thereto?

When the appellants made their objection at the last trial, now under review by us, Judge Mann made the following ruling:

"I will state substantially what my former ruling was in order that it may appear in the present case, having carefully examined the complaint, being of the opinion that the statute being referred to with sufficient definiteness as to put it before the Court, that the Statute under which this case is being tried is sufficiently pleaded and therefore, the motion is overruled."

The Court said:

"*I will state substantially what my former ruling was in order that it may appear in the present case.*" (Italics added.)

Can there be any doubt that the reference to "*my former ruling*" was to the ruling made by the Court in the first trial on this very issue? We do not think so.

Plaintiff offered in evidence certain documents relating to the Carolina Baking Company, to which defendants objected. The following appears in the transcript of record on page 78, folio 311:

"The Court admitted them with reference to the legal questions involved, for the Court's information only *and said that the remarks at this time may not be as full as they were at the first trial of this case; therefore, the Court would give either counsel the privilege of referring at any time they see fit, if it become necessary to the more ampli-*

*fied remarks made by the Court at the other trial."* (Italics ours.)

When the plaintiff offered in evidence certain sections of the North Carolina Code and certain decisions of the Supreme Court of North Carolina, to the introduction of which defendants objected as irrelevant, incompetent and immaterial, the Court said:

"Yes, sir, and I merely adhere to my former ruling with respect to those, overrule the motions and admit them in the testimony." Folios 318-319.

On the motion for nonsuit, one of the grounds was as follows:

"5th. That the pleadings show that the plaintiff is suing under some form of North Carolina action, possibly the Lord Campbell's Act; that he has not pleaded the North Carolina statutory law, Court decisions or common law, and those not having been pleaded cannot be proven, and, therefore, sustains our objection to the complaint as filed with the plaintiff before trial, the complaint contains no cause of action and there is no matter to be sent to the jury."

After argument, the Court said:

"Well as I remember, in substance, I held—

\* \* \*

"Fourth, with respect to the sufficiency of the statute and North Carolina Laws, I hold that that was sufficiently pleaded in the complaint, and that if the defendant had wished to be further notified and have the plaintiff circumscribe within certain specific limits he should have moved at the proper time to make more definite and certain, and they not having done so any relevant aspect of the law at this time would be—and I held in substance before and I reiterate now—

\* \* \*

"Now, I am perfectly willing for that amplified statement to go into the record. I may be a little clearer than I gave it before, for I made it a little more fully."

"Appellants also introduced the following records from the first trial (that of Mrs. Nell Long v. these same defendants-appellants), and from the second trial (that of J. C. Long as administrator of Tom Long v. these same defendants-appellants), in which there was a mistrial." Folio 944, page 237 of this record.

On the motion for directed verdict in this case, the Court said:

"I think I have covered substantially those grounds in my ruling on the motion for nonsuit, and if those remarks are not sufficient to cover the last ground, why I will overrule it and re-adopt insofar as my former remarks in the first trial as to that ground, so the motion generally is overruled." Folio 1000, this record.

These excerpts from the transcript of record in the present appeal are sufficient to answer the objection of the appellants that the proceedings of the first trial are not properly before this Court to show that the Court, in the first trial, passed upon and overruled the objection by the appellants to the introduction of the evidence relating to the North Carolina statute and laws, and that they had been sufficiently pleaded.

We hold that these excerpts do show that Judge Mann, on the first trial of this case, ruled that the North Carolina statute and North Carolina laws were sufficiently pleaded in the complaint. *From this ruling in the first trial there was no appeal.* Respondent now contends that that ruling is the law of the case.

"That a decree from which no appeal is taken becomes the law of the case in all subsequent proceedings involving the same parties and the same subject-matter is the well-settled law in this State, and it is therefore unnecessary to enter upon any extended discussion of this postulate. There are numerous decisions of this Court to this effect, among which are: *Kerchner v. Singletary,* 15 S. C., 535; *Hunter v. Ruff,* 47 S. C., 525, 25 S. E., 65, 58 Am. St. Rep., 907; *Virginia-Carolina Chemical Co. v.*

*Hunter et al.,* 97 S. C., 31, 81 S. E., 190; *Bowling v. Mangum,* 122 S. C., 179, 115 S. E., 212." *Matheson et al. v. McCormac,* 187 S. C., 260, 196 S. E., 883, 884.

" * * * It is well settled that one Circuit Judge cannot set aside or modify the orders of another; except in cases when the right to do so has been reserved to the succeeding Judge, or when it is allowed by rule of Court or statute." *Nixon Grocery Co. v. Spann et al.,* 108 S. C., 329, 94 S. E., 531, 534.

In the case of *Westbrook v. Hutchison,* 190 S. C., 414, 3 S. E. (2d), 207, 209, in which the opinion of this Court was filed May 30, 1939, the excerpt from the opinion of this Court in *Matheson v. McCormac, supra,* hereinabove cited, is cited with approval and there is added to it the following notation. See also *McLaurin v. Newton,* 183 S. C., 379, 191 S. E., 59. After which the *Westbrook case* continues: "From the foregoing authorities, it would appear to be beyond cavil that upon the second trial of the case the trial Judge was bound by the order of the trial Judge on the first trial, in which a verdict as to punitive damages was directed in favor of the respondents. Judge Featherstone did not have the power to reverse, revive, alter or amend the order of Judge Gaston. It was the law of the case until reversed and the order not having been reversed and the appeal therefrom having been abandoned, it became the law of the case. It was *res judicata* as to the issue of punitive damages, and we need not pursue the question further."

In the case of *Montgomery v. Robinson,* 93 S. C., 247, 76 S. E., 188, 189, Judge Watts issued an order holding that the complaint did state facts sufficient to constitute a cause of action and requiring the defendant to show cause before Judge Copes why the injunction prayed for should not be issued. Upon hearing the return to the rule, Judge Copes granted the order of injunction. Judge Watts' order referred the matter to the Master. While the reference was pending, the defendant moved before Judge Wilson for an order revoking the order of injunction and dismissing the

complaint. Judge Wilson overruled the motion. From this order, the defendant appealed. There was no appeal from the orders of Judge Watts and Judge Copes.

This Court said:

"* * * He (respondent) contends that the point that the complaint does not state facts sufficient to constitute a cause of action is *res judicata,* being necessarily involved in and decided by the previous orders of Judges Watts and Copes, from which there was no appeal. If this be so, it is conclusive of this appeal, because, in that event, Judge Wilson had no jurisdiction to consider the matter, for there is no appeal from the decision of one Circuit Judge to another.

"Section 169 of the Code of Procedure provides that, if the objections to a complaint which are mentioned in Section 165 as grounds of demurrer, when they appear upon the face of the complaint, are not raised either by demurrer or answer, when they do not appear upon the face of the complaint, 'the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the Court, and the objection that the complaint does not state facts sufficient to constitute a cause of action.' It follows that the two objections excepted are not waived by the failure to raise them by demurrer or answer; but it does not follow that they cannot be waived at all. Some of the cases, construing this section, hold that these objections can be raised at any time and at any stage of the proceedings. While this statement is true in a way, it is somewhat misleading; for instance it has been held that the objection for insufficiency cannot be raised for the first time in this Court. Therefore it is waived by a failure to raise it in the Circuit Court. *Miller v. George,* 30 S. C., 526, 9 S. E., 659; *Green v. Green,* 50 S. C. (514), 529, 27 S. E., 952, 62 Am. St. Rep., 846. *And it is quite certain that, once it has been properly raised and decided, it cannot be raised again.*" (Italics added.)

It seems needless to cite other authorities.

Appellants did not appeal from the ruling of Judge Mann, and it is now the law of the case.

There is an exception alleging that the Court erred in permitting the introduction of the Mortuary Statute of this State. It was introduced solely for the purpose of fixing the life expectancy of the deceased. There was no error in that.

Exceptions 5, 6, 7 and 8 impute error to the trial Judge in his rulings in and about the issues relating to the Carolina Baking Company, and the Columbia Baking Company.

The companion case to this, viz., *Mrs. Nell Long v. Carolina Baking Company et al.,* 190 S. C., 367, 3 S. E. (2d), 46, 49, was heard on circuit by Judge Oxner, and on appeal to this Court the opinion was filed May 23, 1939, and appears in Westbrook's Opinions of the Supreme Court under date of May 27, 1939; from it we take the following: "The only remaining exception imputes error to the trial Judge in overruling the motions for a nonsuit and a directed verdict in behalf of Carolina Baking Company, upon the ground that there was no such corporation, the same having been dissolved long before the 'accident complained of,' and that hence no action could be maintained against it."

The defenses on the part of the Carolina Baking Company in the *Mrs. Nell Long case* are the same as in this case. The following is the evidence in the *Mrs. Nell Long case* and a brief résumé of the pleadings.

It is alleged that the Carolina Baking Company is a corporation, incorporated in North Carolina. In 1924 it was granted permission to do business in South Carolina and established a business in Greenville, and did business under its corporate name, and has ever since done business there under that name. In 1935 it transferred its assets to Columbia Baking Corporation and was dissolved, although no notice of dissolution was filed in South Carolina. It continued to do business in Greenville under the trade name of Carolina Baking Company. The motor license for the truck involved was issued by the South Caro-

lina Highway Department to the Carolina Baking Company, and the name Carolina Baking Company was painted on the truck. On the plant in Greenville is a sign which reads "Carolina Baking Company." From the opinion of Acting Associate Justice Lide in the *Nell Long case,* we take the following:

"The first defense alleged in the answer might be construed as analogous to a plea in abatement under the common-law practice, wherein the defendant was required to give the plaintiff a better writ; and if the plaintiff in this case had accepted the proffer and amended by bringing her suit against Columbia Baking Company, perhaps that much of the controversy might have been eliminated. However, we do not think her failure so to do has any material consequence so far as the ultimate result is concerned, for the evidence truly admits of no other reasonable inference but that the corporate entity which appeared and defended this action on the merits acquired the assets formerly owned by the corporation whose corporate name was Carolina Baking Company, and continued to do business in that name as a trade name; and hence the verdict and judgment against Carolina Baking Company is binding upon the existent corporate entity and its assets, by whatsoever name it may be known or called. The corporate fiction and the rules surrounding it have been of inestimable service in the affairs of business, but they must be applied in such a manner as to promote justice, not to hinder or defeat it.

"In the case of *Tunstall v. Lerner Shops,* 160 S. C., 557, 159 S. E., 386, 389, an action was brought and a judgment obtained against the defendant in the name of 'The Lerner Shops, Inc.' It later appeared that the correct name of the defendant was 'Lerner Stores Corporation,' and the Court held that the judgment should be amended, and that the misnomer of a corporation has the same effect as the misnomer of an individual, which is properly a subject of amendment. The Court also quotes with approval the following statement from 14 C. J., 325:

" 'If a corporation has acquired a name by usage *an adjudication against it by the name so acquired is valid and binding.*' (Emphasis added.) See, also, *Alexander v. Berney,* 28 N. J. Eq., 90; *Wilkins v. McCorkle,* 112 Tenn., 688, 80 S. W., 834, and *Ferry v. Cincinnati Underwriters,* 111 Mich., 261, 69 N. W., 483, to the same effect.

"The rule is stated in 13 Am. Jur., 270, as follows:

" 'A corporation, as well as individuals, may have or be known by several names in the transaction of its general business so that it may enforce, as well as be bound by, contracts entered into in an adopted name other than the regular name under which it was incorporated.

" 'It seems to be universally recognized that a corporation may do business under an assumed name or under a name differing from its true corporate name. It seems also to be recognized, however, that suit brought by or against a corporation should be in the true name of the corporation.'

"The last sentence in the foregoing quotation does indeed indicate that ordinarily a suit should be brought in the correct corporate name; but under the principles laid down in the case of *Tunstall v. Lerner, supra,* and the other authorities cited, this would not invalidate the judgment, where, as here, the corporate defendant has suffered no prejudice, to say nothing of the matter of waiver hereinafter briefly discussed.

"Carolina Baking Company applied for and obtained from the State Highway Department in that name a license for the operation of the motor truck in question which was involved in the collision. It would be most anomalous to say that Carolina Baking Company has sufficient existence to receive a license to operate the truck, but not enough to assume responsibility for the *proper* operation thereof as required by law. Under these circumstances the corporate entity admittedly owning and operating the truck cannot seek thus to be relieved of responsibility, or justly complain because plaintiff used the name it deliberately adopted for its own trade purposes.

"There are other considerations supporting our conclusion, and brief allusion will be made to one of them, to wit, that the corporate entity defending this action waived the right to deny the corporate existence of Carolina Baking Company, because there was a general appearance and a plea on the merits.

"In the case of *Sentell v. Southern Railway*, 67 S. C., 229, 45 S. E., 155, 156, the defendant pleaded a misnomer in abatement of the action and also pleaded to the merits of the cause, and the Court said:

" 'With respect to the question of jurisdiction, Southern Railway was served with summons in this case, appeared generally, and, in addition to the plea as to misnomer, answered to the merits. This was sufficient to confer jurisdiction over Southern Railway Company.'

"Both of the exceptions are overruled and the judgment of the Circuit Court is affirmed."

In our judgment this opinion correctly disposes of the issues made by the exceptions in the present case on the question of the Carolina Baking Company. Accordingly, they are overruled.

Exception 9 alleges error for the failure of the Circuit Judge to strike from the complaint, on appellants' motion, all reference to punitive damages and supporting elements thereof.

Plaintiff on the first trial of the case withdrew the plea for punitive damages, and the Court explicitly charged the jury that they could not find punitive damages. We think Exception 9 is without merit.

Exceptions 10, 11 and 12 are based upon the grounds that the evidence is insufficient to support the conclusion reached, and certain evidence, which was offered by appellants which was competent, relevant and material, was overruled.

These exceptions relate to the admission or rejection of testimony, which matters were in the discretion of the presiding Judge, and we see no abuse of

discretion by him. Where the exceptions relate to the sufficiency of the evidence to support the verdict of the jury, it does not need that we cite authorities to support the rule that where there is competent and relevant evidence on the facts to take the case to the jury, this Court cannot interfere with their verdict.

Exception 13 is taken to that portion of the charge as to actual damages which is, in part, in this language: " 'Under the law of North Carolina one cannot recover punitive damages, that is, punish a person for willfulness or wantonness. That is under this statute under which this action is brought, I should have said. The plaintiff in this action could recover only actual damages; that is, damages to compensate the persons interested for the actual loss occasioned to them by the death of Mr. Tom Long. If you find they are entitled to recover in this action, those are the elements of damage only you can assess.",

We may say that the language contained in the exception is not all the Court had to say on the subject. Counsel for the plaintiff said:

" * * * your Honor said something about comfort and companionship; under the North Carolina law the sole element of damage is the financial loss.

"The Court: I thought it was alleged in there, * * * only pecuniary loss can be assessed if you find the plaintiff is entitled to recover, * * * .

"The Court: * * * All right, Mr. Hicks, any suggestions? A. No, sir, nothing from me, your Honor."

The error charged is that it does not charge the law of North Carolina, as laid down in the statutes and cases introduced over objections by appellants, giving the measure of damages.

It appears that the Courts of North Carolina have construed Section 161 of the Code of North Carolina as follows: "The amount of damages which may be recovered in cases arising under C. S. § 160, * * * is fixed by C. S. § 161 at 'such damages as are a fair and just compensa-

tion for the pecuniary injury resulting from such death.' * * * Under the State statute, * * * the damages are based on the present worth of the net pecuniary value of the life of the deceased. * * * It is only the present worth of the pecuniary injury resulting from the wrongful death of the deceased that may be awarded the plaintiff. * * * only a fair and just compensation for the pecuniary injury resulting from the death of the deceased is to be awarded." *Carpenter v. Asheville Power Co.,* 1926, 191 N. C., 130, 131 S. E., 400, 401.

Section 161 of the North Carolina Code, introduced in evidence, is in these words: "§ 161. Damages recoverable for death by wrongful act.—The plaintiff in such action may recover such damages as are a fair and just compensation for the pecuniary injury resulting from such death."

It will be noted that counsel for the appellants did not request the Court for any other, or more specific, charge of the law of North Carolina on the subject of actual damages and how measured. On the contrary, when he was asked by the Court if he had any suggestions, he answered: "Nothing from me, your Honor."

In addition to the language cited by the appellants in their fifteenth exception, the Court in its charge, said: " * * * If you find that they are entitled to recover, the field of testimony is before you, as to his worth in dollars and cents and comfort and companionship, his earning capacity and his ability to contribute to his dependents and to those entitled to recover in this action. * * *."

As shown hereinabove, Mr. Price called to the attention of the Court that under the law of North Carolina "comfort and companionship" were not elements for which damages could be given; whereupon His Honor corrected the charge in that respect, and instructed the jury that these elements of damage could not be considered by them.

In the case of *Grimsley v. Atlantic Coast Line R. Co.,* 189 S. C., 251, 1 S. E. (2d), 157, 161, the question involved in Exception 15 of this appeal was considered and fully dis-

cussed. That case was heard by Circuit Judge Lide. It was brought under the Federal Employers' Liability Act, 45 U. S. C. A., § 51 *et seq.* He charged the jury in part in these words: " * * * I charge you that this action is for actual and compensatory damages only and not for punitive damages, or damages by way of punishment. We have gotten into the habit of calling them actual damages. The term that was formerly used was 'compensatory.' The words are practically the same—'actual' or 'compensatory'— to compensate; to put the person in the same position as he was before the injury so far as that may be practicable. I charge you that the measure of damages would be the actual amount naturally and proximately resulting from the injury. The complaint here alleges as elements of damage, pain and suffering, physical impairment, loss of time, and diminution of earning capacity. * * * * "

The plaintiff in that case appealed on exceptions which were based on the following proposition: Did the Circuit Judge err in his charge as to the measure of damages in that having instructed the jury that it was required to include in its verdict all damages, both present and future, he failed to limit the recovery of future damages to their present value?

As a prelude to its opinion, this Court said:

"We think that it must be conceded that in this jurisdiction in an action brought under the Federal Employers' Liability Act, the rule prevails that when prospective damages are included in the verdict, they must be reduced to their present cash value.

"We may go further and concede that it is the duty of the Court so to instruct the jury whether or not the instruction has been asked for.

"Is it necessary to the validity of the verdict in such action that the Court shall state the rule in the exact language * * * to wit: ' " * * * fix the damages at that sum which represents the present cash value of the reasonable expectation of pecuniary advantage * * *." ' "

It is to be regretted that we may not, in the present case, reproduce the body of the opinion in the *Grimsley case, supra,* since it compiles authorities apt and controlling in this case. We may, however, present a fairly full compendium of them.

In the case of *Tyner v. Atlantic Coast Line Ry. Co.,* 149 S. C., 89, 146 S. E., 663, 665, the Circuit Judge refused to charge the request of the defendant to the effect that "the damage is limited strictly to the financial loss sustained and is always the present cash value of the future benefits of which the beneficiaries were deprived" etc. This Court held that the error was harmless in view of the fact that the Circuit Judge charged the jury as follows: " * * * if (you) come to the conclusion * * * that the plaintiff is entitled to a verdict, that the measure of recovery * * * is such an amount as will fairly and reasonably compensate (the beneficiaries) for the loss of pecuniary benefits which they might reasonably have received if the deceased had not been killed." On appeal to the United States Supreme Court, 278 U. S., 565, 49 S. Ct., 35, 73 L. Ed., 508, the action of this Court was reversed, not because it held the instructions given to be erroneous, but because the Circuit Judge refused to give the instructions requested by the defendant.

In our present case the appellants asked for no instruction on the grounds upon which it now appeals. On the contrary, it declined to avail itself of the opportunity to do so when it was offered it.

In the case of *Louisville & N. R. Co. v. Holloway,* 246 U. S., 525, 38 S. Ct., 379, 380, 62 L. Ed., 867, the charge was: "The measure of recovery * * *, being such an amount in damages as will fairly and reasonably compensate the widow of the said John G. Holloway, deceased, for the loss of pecuniary benefits she might reasonably have received if the deceased had not been killed * * *."

The plaintiff recovered. On appeal Mr. Justice Brandeis said: "The instruction given, though general, was correct.

It declared that the plaintiff was entitled to recover 'such an amount in damages as will fairly and reasonably compensate' the widow 'for the loss of pecuniary benefits she might reasonably have received' but for her husband's death. This ruling did not imply that the verdict should be for the aggregate of the several benefits payable at different times, without making any allowance for the fact that the whole amount of the verdict would be presently paid at one time. The instruction bore rather an implication to the contrary; for the sum was expressly stated to be that which would 'compensate.' The language used was similar to that in which this Court has since expressed, in *Chesapeake & O. R. Co. v. Kelly, supra,* 241 U. S. (485), 489, 36 S. Ct., 630, 60 L. Ed., 1117, L. R. A., 1917-F., 367, the measure of damages which should be applied. The company had, of course, the right to require that this general instruction be supplemented by another calling attention to the fact that, in estimating what amount would compensate the widow, future benefits must be considered at their present value. *But it did not ask for any such instruction.* * * * (Italics added.)"

And no instructions were asked in our case. In the *Grimsley case, supra,* it is said: "Counsel for appellant in this action are able and experienced lawyers. Doubtless, they are well aware of the 'present cash value' rule. Inasmuch as they did not ask for specific instruction thereabout, it is a fair inference that they were satisfied with the instruction as given, and that they waived further instruction thereabout."

After the decisions of the United States Supreme Court in the cases of *Tyner v. Atlantic Coast Line R. Co., supra; Chesapeake & O. R. Co. v. Kelly, supra,* and *Louisville & N. R. Co. v. Holloway, supra,* this Court heard and decided the case of *Youngblood v. Southern R. Co.,* 152 S. C., 265, 149 S. E., 742, 744, 77 A. L. R., 1419. In that case the verdict was for the plaintiff. On the trial, the Cir-

cuit Judge gave the following charge on the measure of damages:

" '(15) If the jury conclude that, under the law as charged by the Court and according to the evidence in the case, the plaintiff is entitled to recover a verdict then such verdict should cover the pecuniary, or monetary, loss sustained by the beneficiaries named in the act by reason of the alleged wrongful death of the intestate; but no damages, other than pecuniary, or monetary, damages or loss, can be considered by the jury in making up the amount of the verdict, if any is to be awarded.'

" '(16) In determining the amount of damages, if any are to be awarded to the plaintiff, the jury are to consider only the pecuniary loss or damage, if any, flowing to the dependent beneficiaries named in the act and in the complaint. * * * ' "

This action was laid under the Federal Employers' Liability Act, 45 U. S. C. A., § 51 *et seq*. On the appeal to this Court it was assigned as error that the trial Judge failed to charge on the measure of damages that "only the present cash value of the reasonably expected pecuniary benefits of which the beneficiaries were deprived by the death of plaintiff's intestate were reasonable in any event. Mr. Justice Stabler (now Chief Justice) delivering the opinion of this Court, said: "There is no instruction *in totidem verbis* as to 'present value,' and the appellants contend that what the trial Judge actually charged 'cannot possibly be construed as submitting to the jury the present value of damages,' but, on the contrary, 'authorized the jury to award the present recovery of the total future benefits without making any deduction or discount to ascertain their present worth.' "

Commenting on this argument of counsel in that case, Mr. Justice Stabler quoted from the opinion of the Supreme Court of the United States in the *Kelly case, supra,* the following: " 'The damages should be equivalent to compensation for the deprivation of the reasonable expecta-

tion of pecuniary benefits that would have resulted from the continued life of the deceased. * * * So far. as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future.' "

This quotation is reproduced here because it is apparent that the Supreme Court of the United States therein indicates that it is not necessary to the validity of a verdict that the charge upon which it is based shall be couched in the exact language of the law on which it is founded.

In the *Youngblood case, supra,* Mr. Justice Stabler quoted from the case of *Western & A. R. 'R. v. Hughes,* 37 Ga. App., 771, 142 S. E., 185, which went on appeal to the U. S. Supreme Court and is reported in 278 U. S., 496, 49 S. Ct., 231, 73 L. Ed., 473, the following: " 'The railroad argues also that the charge failed to make it clear to the jury that, in computing the damages recoverable for the operation of future benefits, adequate allowance must be made, according to circumstances, for the earning power of money, that the verdict should be for the present value of the anticipated benefits, and that the legal rate of interest is not necessarily the rate to be applied in making the computation. *Chesapeake & Ohio Ry. Co. v. Kelly,* 241 U. S., 485, 491, 36 S. Ct., 630, 60 L. Ed., 1117 (L. R. A., 1917-F, 367) ; *Gulf, Colorado & Santa Fe Ry. Co. v. Mosler,* 275 U. S., 133, 48 S. Ct., 49, 72 L. Ed., 200. There is no room for a contention that the charge failed to state correctly the applicable rule. If more detailed instruction was desired, it was incumbent upon the railroad to make a request therefor. *Louisville & Nashville R. Co. Holloway,* 246 U. S., 525, 38 S. Ct., 379, 62 L. Ed., 867. It did not do so.' "

After citing other applicable cases to the same effect, the writer of the opinion of our Court in the case of *Youngblood v. Southern Ry. Co., supra,* said this: "We deduce

from these authorities that, as the present value rule laid down by the United States Supreme Court as to the measure of damages is 'an integral part of the statute,' it is incumbent on (the part of) the trial Judge to instruct the jury as to that rule, whether he be so requested or not; but, when such instruction is correct as a general statement of the rule, a party desiring more detailed instruction must make request therefor. In the case at bar there was no request for a charge as to the present value rule; but, as there was no charge at all, general or otherwise, stating the rule—the charge given not being susceptible of such construction—we think there was error."

Now in our case, there was a general charge which is susceptible of application to the North Carolina rule, and there was no request for a more detailed charge thereabout. It follows that the exception cannot be sustained.

Exception 16 charges error to the trial Judge for that he charged that "the driver of the truck was acting within the scope, or the apparent scope, of his employment."

It does not appear that anyone called to the attention of the Court this apparent misstatement of the law. However, it was a harmless one. The complaint stated that the driver of the truck was within the scope of his authority, and the evidence shows that he was acting within the scope of his authority. The jury could not have been misled by the error, to the injury of the appellants.

It is suggested that the decision of this Court in the case of *Rawton v. Pullman Company*, 183 S. C., 495, 191 S. E., 416, is counter to the opinion herein expressed. We do not think so. In this case the cardinal question is: Is the North Carolina law sufficiently pleaded to show that the North Carolina law prevails in this case?

In the *Rawton case* there was evidence to show that under the laws of the Republic of Mexico there was provided no remedy for a tort of the nature of that set out in the com-

plaint, and, as the tort alleged occurred in Mexico, there was no jurisdiction to try the case in this State.

The exceptions are overruled and the judgment is affirmed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE FISHBURNE concur.

MESSRS. JUSTICES CARTER and BAKER dissent.

MR. JUSTICE BAKER (dissenting):

It is always with trepidation that I venture to disagree with an opinion authored by Mr. Justice Bonham, but I would be derelict in my duty, as I see it, not to here record my view of Exceptions 1, 2, 3 and 4, which raise the issue whether the North Carolina law is sufficiently pleaded; and if by reason of the first trial of this case such issue has become academic.

This action was for the alleged wrongful death of respondendent's intestate, and the only reference in the complaint to any North Carolina statute is contained in paragraph four of the complaint, and is as follows: "4. That the deceased left a widow, Mrs. Nell Long, who was entirely dependent upon him for support and this action is brought by the plaintiff as administrator for the benefit of the said widow and such other heirs as may under the law of North Carolina be entitled to benefit thereby."

As stated in the main opinion, the defendants (appellants here) did not demur to the complaint, nor did they set up in their answer the contention for which they now contend, but before the second trial, served the following notice on plaintiff's (respondent's) attorneys:

"Please Take Notice:

"That the defendants, not having raised the following objection by demurrer or answer, now file their notice of objection to the complaint upon the ground that the complaint does not state facts sufficient to constitute a cause of action, because the complaint shows that it is based upon the laws of North Carolina, and such laws have not been

alleged in the complaint, as required by the law of South Carolina."

After the pleadings were read, one of defendants' (appellants') counsel stated in open Court: "At this time we move to exclude the evidence in the case because there is no cause of action set up in the complaint, the complaint being apparently under some form of Lord Campbell's or death statute of North Carolina, which is not pleaded in the complaint as required by law."

It will therefore be seen that upon the call of the case for trial, and after notice, the appellants demurred orally on the ground that the complaint did not state a cause of action, and later moved to exclude all evidence in the case because there was no cause of action stated in the complaint.

The trial Judge overruled the oral demurrer, and permitted plaintiff (respondent) to introduce the Lord Campbell Act of North Carolina. Plaintiff (respondent) neither offered to amend, nor amended this complaint so as to plead in substance said Act.

At common law there was no right of action for death caused by wrongful act. And in the absence of any allegation in the pleadings, where a statute of another State is relied upon as giving the right of recovery, of at least the substance of such statute, then the pleading is defective; and the complaint fails to state a cause of action.

In *Rosemand v. Southern Ry.*, 66 S. C., 91, 98, 44 S. E., 574, 576, this Court stated: "When a cause of action arises in another state, it cannot be said that the Courts and parties are familiar with the doctrines and requirements of the law applicable to the case, and that 'they will at once perceive and know what are the primary and remedial rights and duties of both the litigants.' The complaint must therefore set forth the rule of law applicable to the facts from which the plaintiff's primary right and the defendant's primary duty arise, if they are founded upon statute; otherwise he will be forced to rely upon the common law as the founda-

tion of these rights and duties. In the absence of allegations as to the laws of another state, the Courts will presume that the common law prevails in that state, 6 Ency. of Law (2d Ed.), 284; *Gooch v. Faucett* (122 N. C., 270), 29 S. E., 362, 39 L. R. A., 835; *Sibley v. Young,* 26 S. C., 415, 2 S. E., 314; Watson on Pers. Inj., § 554."

And again in *Crosby v. Air Line Railway,* 81 S. C., 24, 30, 61 S. E., 1064, 1066, after discussing the case of *Rosemand v. Southern Ry., supra,* the opinion continued: "But the rule, stated in its broadest terms in Rosemand's case, harmonizes with the simpler rule that the common law of the forum should govern in the absence of any evidence as to the law of a sister state, because there is no other known law by which the case is solvable; and the Court will not presume that the law of a sister state, whatever may be its historical origin, is contrary to the common law as administered in this State. Wherever the laws of another State are relied on to sustain an action or defense, they must be pleaded and proven. There is some conflict of opinion and much learning on the subject, but we regard the rule stated as the simplest and most practical, and find that it is well supported by authority. See *Brown v. Wright,* 58 Ark., 20, 22 S. W., 1022, 21 L. R. A., 467, containing an elaborate note in which cases are collated."

The annotation in 18 A. L. R., at pages 1201-1202, so succinctly states the necessity ordinarily of pleading in substance a foreign law or statute when such law or statute is relied upon, that we quote with approval therefrom, the following:

"Since a foreign law is regarded as a matter of fact, it is uniformly held that it should be pleaded, so far as relied on, with such clearness and certainty, and at such length, as will enable the Court to judge of the meaning and effect to be given to it.

" 'The law of another state * * * is nothing but a fact, and must be pleaded, as any other fact, with suffi-

cient distinctness, that the Court, upon a statement of facts, may judge of what is the effect of the law.' *Roots v. Merriwether* (1871), 8 Bush (Ky.), 397.

"In *Wellman v. Mead* (1919), 93 Vt. 322, 107 A., 386, the Court said: 'A complaint counting upon a statute of another State should set forth the statute and facts so specifically that the Court can see that the plaintiff has a right of action against the defendant.' "

Under the most liberal construction of pleadings, respondents' complaint cannot be said to comply with the rule in this State.

Nothing appears in the record on which this appeal was heard definitely showing that any demurrer or other objection to the sufficiency of the complaint for failure to state a cause of action was interposed at the first trial, and while the brief of respondent on rehearing asserts it, yet the brief of appellants emphatically denies it. Therefore, the Court can make no finding on the subject without basing its finding on mere inference and not upon any substantial evidence, or on the statement contained in respondent's brief. It does not seem that the Court should go so far as to make a finding so far reaching and so vital to the rights of the appellants on such a basis. If respondent intended to rely upon such a position, it was his duty to see to it that the record for appeal contained a sufficient basis for the Court to pass on it. The absence from the record of the proper supporting basis ought to be attributed just as much, and perhaps more, to the fault of respondent as to the fault of the appellants, since both the respondent and the appellants had equal rights and responsibilities in relation to the presentation of a proper and adequate record on appeal to this Court.

The extract from the record beginning with the words "I will state substantially * * *" (Transcript, page 9, folio 36), referred to in the majority opinion in support of the assumption that a demurrer for insufficiency

was interposed at the first trial, does not at all necessarily indicate that fact, since the remarks of Judge Mann are equally susceptible of the inference that he was referring to something other than a ruling on a demurrer at the first trial. The notice of demurrer is on page 9 of the record, but no ruling on it appears. The record next states that the pleadings were then read, and immediately after the pleadings were read it shows that counsel for appellants made the statement that he would move to exclude respondent's evidence. The next thing appearing in the record is the Court's ruling, upon which so much stress is placed in the majority opinion. Upon consideration of the entire context it seems plainly evident that Judge Mann's reference to a former ruling by him could just as appropriately be applied to the notice of demurrer just previously interposed on this trial as to some ruling at another trial.

In the statement of Judge Mann on page 250 of the transcript, folio 1000, made in the course of his remarks in refusing to direct a verdict on this trial, when he referred to his remarks in the first trial, he plainly had reference to his remarks at that trial in refusing to direct a verdict and not to a ruling on a demurrer; but if there should be any doubt about this, the Court would have to rest a conclusion that he was referring to a ruling on a demurrer interposed at the former trial wholly upon surmise or conjecture.

There can be no doubt that an order sustaining or overruling a demurrer, from which there is no appeal, is in the nature of a final judgment, and that the questions thereby determined cannot be raised again in the same case. *Hodge v. Lumber Corp.,* 90 S. C., 229, 71 S. E., 1009; *Brewton v. Shirley,* 93 S. C., 365, 76 S. E., 988; *Mortgage & Acceptance Corp v. Broadwell,* 153 S. C., 67, 150 S. E., 345; *McEachern v. Wilson,* 154 S. C., 201, 151 S. E., 472; and the same is also true for the same reason as to an order directing a verdict. *Westbrook v. Hutchison,* 190 S. C., 414, 3 S. E. (2d), 207. This follows from the fact that an order sustain-

ing or overruling a demurrer or directing a verdict is a final determination of the rights of the parties. It seems clear, however, as previously pointed out, that there is nothing in this record sufficient to warrant the assumption that any order was made in a former trial overruling a demurrer to the complaint; and if it should be suggested, as the majority opinion apparently does, that the rulings on the former trial had to do with the admission of testimony, it would seem to lay down a far-reaching and wholly new rule in this State to hold that such rulings were the law of the case on a retrial after a mistrial. It has never been supposed that the rulings of a Circuit Judge on the admissibility of testimony in a trial which has resulted in a mistrial are binding on the Circuit Judge who thereafter retries the case. This is obviously true for the reason that a mistrial is not a final determination of the rights of the parties, but on the contrary it determines nothing.

The cases cited in the majority opinion are clearly distinguishable, because in each of those cases there was some final determination of the rights of the parties in relation to the matter in controversy, but in this case there was a mistrial and no determination. The effect of a mistrial is very different from the effect of a final order or decree, or of an order sustaining or overruling a demurrer, or a direction of a verdict as to punitive damages as in *Westbrook v. Hutchison, supra.* The effect of a mistrial is to leave the case just as if there had been no trial at all. In *Floyd v. Page,* 124 S. C., 400, 117 S. E., 409, this Court said: "The effect of the mistrial was to leave the parties litigant *in statu quo ante,* with the cause still pending for trial in the circuit court. The rulings of the trial judge in the court below having eventuated in no binding adjudication of the rights of the parties, the appeal is prematurely brought, and jurisdiction thereof may not be entertained.   *   *   *"

The quoted excerpt from the case of *Lorick v. Seaboard Air Line Railway,* 108 S. C., 100, 103, 93 S. E., 332, it

seems to me, is peculiarly applicable to the issue under discussion: "The other question in the case is based on the allegation that there was no evidence of negligence in the case on the part of the defendant that had a proximate causal connection with plaintiff's injuries. This point was not made or adjudicated in the former appeal, although it could have been made then as well as now, as the evidence in this case is practically the same as in 'the first case, and the defendant overlooked or did not think of it then and the defendant is within his rights in making it for the first time in the trial the second time in the circuit court."

Although he seemed to go entirely too far in his suggested application of the rule, yet counsel for respondent appears to have had the same view as to the effect of a mistrial, as will be indicated by a consideration of the remarks found on pages 248-249 of the Transcript of Record.

For the reasons above stated, Exceptions 1, 2, 3 and 4 should be sustained.

MR. JUSTICE CARTER concurs.