---

See, also (C. C. A.) 61 F.(2d) 238.

Ashton File, of Beckley, W. Va. (W. W. Goldsmith and File, Goldsmith & Scherer, all of Beckley, W. Va., on the brief), for appellants.

J. Powell Royall, of Tazewell, Va., and D. M. Easley, of Bluefield, W. Va. (French, Easley, Easley & French, of Bluefield, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

These are separate actions of covenant on bond brought in the District Court of the United States for the Southern District of West Virginia, by the city of Beckley, a municipal corporation, for the use and benefit of Rees T. Bowen and James W. Thompson, respectively, against Elwin Moran and Ætna Casualty & Surety Company, a corporation.

The defendant Moran was appointed chief of police of the city of Beckley, W. Va., January 1, 1930, and gave bond as required by the charter of the city with the defendant surety company as surety, payable to the city of Beckley, conditioned for the faithful and impartial discharge of the duties of the office of chief of police of the police force of the city of Beckley and for the accounting for and paying over, as required by law, all money which might come into his hands by virtue of such appointment.

These actions are grounded upon alleged illegal arrests and imprisonment of plaintiffs by the defendant Moran in the city of Beckley on the night of August 25, 1931. **The**

**MORAN et al. v. CITY OF BECKLEY, for Use of BOWEN.**

**SAME v. CITY OF BECKLEY, for Use of THOMPSON.**

**Nos. 3503, 3504.**

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1933.

specific grounds relied upon for recovery, as charged in the declarations, are that Moran, while engaged in the performance of his duties as chief of police, illegally arrested the plaintiffs, without a warrant, while they were passing through the city en route to Tazewell county, Va., from Detroit, Mich., where they had gone to drive two Plymouth automobiles from the factory to the purchaser, who is alleged to have resided at Tazewell, Va., and to have been duly authorized acting dealer in such automobiles; that such automobiles were being driven on Virginia tags or plates of such dealer alleged to be the usual dealer's tags or plates used in the state of Virginia by dealers in automobiles; that while driving such automobiles through the city of Beckley, they were accosted by Moran, who informed them that he was chief of police of the city, and that the city did not recognize the tags or plates on the automobiles driven by them; that Moran, claiming they had no right to drive such automobiles on the tags or plates carried thereon and that they had violated an ordinance of the city of Beckley and also the laws of the state of West Virginia in driving such automobiles through the city on such license tags, arrested the plaintiffs and caused them to be confined in jail on the charge of violating such ordinance and laws of West Virginia; that Moran, as such chief of police, required each of the plaintiffs to pay a fine of $15.70 and an additional sum of $2 each which had been imposed upon them by the inmates of the jail in a mock trial of plaintiffs as the condition upon which plaintiffs were released from jail. The declarations further charge that the tags on the automobiles were being used in pursuance of an agreement entered into between the director of motor vehicles of Virginia and the registrar of motor vehicles of West Virginia pursuant to authority vested in them by the laws of such states.

The defendants appeared and filed their separate written demurrers to the plaintiff's declarations. The District Court sustained the demurrer filed to the declaration in the Bowen case, from which ruling Bowen prosecuted an appeal to this court, which reversed the ruling of the District Court and remanded the case for trial. City of Beckley v. Moran et al., 61 F.(2d) 238.

The defendants thereafter filed their several written pleas of the general issue, separate pleas of covenants performed and covenants not broken, to the declarations, on which pleas issues were duly joined.

The defendants defended these actions up-

on the grounds: (a) That plaintiffs had no right to operate these automobiles in the city of Beckley on Virginia dealer's license tags because such automobiles were then owned by Keesee & Co., a resident of Bluefield, W. Va., and had been consigned by the factory to that company at Bluefield, W. Va.; wherefore, plaintiffs could not establish the right to recover against the defendants by proof that Moran arrested plaintiffs on the charge of having violated an ordinance of the city of Beckley by operating these automobiles in the city on such license tags, because the arrests were not illegal if made on that charge; and (b) that the plaintiffs were arrested by Moran for violating the ordinances of the city of Beckley regulating the speed at which automobiles might lawfully be driven therein, and that such offenses were committed in the presence of Moran for which he was required, and had the lawful right, to arrest plaintiffs without a warrant.

Pursuant to agreement of counsel for the respective parties the District Court ordered these cases tried together before the one jury, but required separate verdicts on which separate judgments should be entered.

The cases were tried at the January, 1933, term of the District Court at Bluefield and resulted in separate verdicts in favor of the plaintiffs for the sum of $1,250 each.

The defendants jointly and severally moved the District Court to set aside each of the verdicts and award them a new trial in each case, which motions were overruled and judgment entered for each of the plaintiffs against both of the defendants on the verdicts rendered. From these judgments these appeals were brought.

There was a direct conflict in the evidence as to what happened at the time of the arrest of the two appellees. In their evidence they gave one version and Moran and other witnesses gave another. The trial judge in his charge virtually told the jury that if they believed the evidence of Moran they should find for the appellants. The jury evidently believed the story told by the appellees and found a verdict in their favor. Courts are loath to invade the province of the jury, and a study of the record discloses ample evidence to support the verdict.

The incidents surrounding the arrest and imprisonment of the appellees lead us to the conclusion that, in arresting the two young men and throwing them in jail for the night, Moran acted in a high-handed, arbitrary, and unlawful manner. According to the story of the appellees they asked to be allowed to give

bond or to telephone friends, both of which requests were refused by Moran. Moran testified that he offered to release them on bond but fixed the amount required at $35, which was just a little more than they had. Moran denied the story of the appellees and claimed that he did not allow them to go before the police judge because it was late at night and he did not want to disturb the judge; and that he (Moran) did not have the authority to accept bond himself. Moran's evidence is contradicted by the entries he himself made on the police register at the jail and by the fact that he admitted, as the jailor also testified, that he ordered the boys released the next morning, after they had been in jail the remainder of the night, on their depositing $15.-70, as bail for both of them. The police judge had not been consulted at the time of their release in the morning.

There are a number of assignments of error, but we consider only those dealing with the charge of the trial judge as meriting consideration.

■ It is contended that the court erred in giving the following instruction: "The Court instructs the jury that an arrest for one offense cannot be justified by proof of another separate and distinct offense, though both were intimately associated in time and place, and if you believe from the evidence in this case that the plaintiffs were arrested without a warrant and imprisoned by the defendant Elwin Moran for driving two Plymouth cars through the city of Beckley with only Virginia dealer's plates thereon, you will find for the plaintiffs, although you may further believe that as they approached said city or while driving therein they violated the ordinances of said city or the law of the State of West Virginia in regard to speeding."

We think the instruction was proper. An arrest for one offense cannot be justified by proof of another, even though intimately connected in time and place. Comisky v. N. & W. R. Co., 79 W. Va. 148, 90 S. E. 385, L. R. A. 1917D, 220; Snead v. Bonnoil, 49 App. Div. 330, 63 N. Y. S. 553; 25 C. J. 496.

In any event, this instruction could not have been prejudicial to the appellants because the jury decided the question, as to whether or not the appellees were arrested for speeding, against the contention of Moran.

It is also contended that the court erred in instructing the jury that the appellees were not violating the law in using the dealer's tags or license plates. We cannot agree with this contention. Painter & Co., the firm for which the boys went to Detroit to get the cars, were the actual purchasers of the cars and though the sale was made through Keesee & Co., a Bluefield, W. Va., firm, who were the distributors for the territory in which Painter & Co. operated, the sale was to Painter & Co., and the delivery to the appellees in Detroit was delivery to Painter & Co. Chapter 17, art. 2, § 9, of the Code of West Virginia, authorizes reciprocal agreements with other states as to dealer's licenses or plates, and it was proven that such an agreement had been entered into between the states of Virginia and West Virginia and was in effect at the time of the arrest of the appellees. The laws of West Virginia were not being violated by the use of the dealer's plates and the trial judge correctly charged to that effect.

■ The principle assignment of error relied upon on behalf of appellants is that the judge erred in commenting upon an instruction given at the request of the defendants at the trial; the instruction and comment are as follows:

"The Court instructs the jury that if you believe from the evidence in this case that the defendant, Elwin Moran, was chief of police of the city of Beckley on the 25th day of August, 1931, and that the plaintiff, Rees T. Bowen" (and the same thing applies to Thompson), "in the presence of Elwin Moran drove the automobile then and there operated by him in the corporate limits of the city of Beckley while approaching a bridge, sharp curve, street crossing or intersection streets or turned any street corner or crossed a bridge within the corporate limits of the city of Beckley at a greater rate of speed than eight miles per hour, then you are further instructed that under an ordinance then in force in the city of Beckley the said Rees T. Bowen was guilty of having committed a misdemeanor for which the defendant, Elwin Moran, had the right to arrest plaintiffs (Bowen and Thompson) without a warrant and cause them to be confined in jail until they could be brought before the police judge of the city of Beckley on the following day, and if you further believe from the evidence that the defendant, Elwin Moran, did arrest the plaintiffs for any such violation of such speed ordinance of the city of Beckley, and caused the said plaintiffs to be confined in jail for such offenses until they could be brought before the police judge of the city of Beckley on the following day, it is your duty to find for the defendants.

"The only explanation and qualification is I hold as a matter of law that any defendant has a right to have a reasonable opportunity to give bond. Whether they wanted to give bond in this case or not is a disputed question. They said that they did and the other side said they didn't,—that's a question for you and not for me. * * * "

We are of the opinion that the learned trial judge correctly stated the law in this respect. The right to have a reasonable opportunity to give bond is an inalienable right guaranteed to every citizen who is charged, but not yet convicted, with the commission of a bailable offense—a right guaranteed to them by the Constitution of the United States and a right recognized by the Constitution of West Virginia. Section 23 of the Charter of the City of Beckley (Acts of West Virginia Legislature 1927, Municipal Charters, c. 18), provides: " * * * In case of the violation of any ordinance of said city in the presence of or within view of the chief of police, or other police officer, the offender may be forthwith apprehended and taken before the police judge, and a complaint under oath, stating such violation, there lodged and filed, and thereupon such offender may be tried and dealt with according to law without summons. * * * "

In the opinion in the case of Bryan v. Comstock, 143 Ark. 394, 220 S. W. 475, 476, 9 A. L. R. 1346, a case in which the facts are strikingly similar to the facts in the instant case, is found a full discussion of this question. There the court said:

"Of course, a peace officer is clothed with certain discretion as to the conditions under which he should make an arrest without a warrant for an offense committed in his presence, and with what expedition he should carry the person arrested before the officer having jurisdiction of the offense. But here there was no exercise of discretion; rather, there was a very gross abuse of discretion. Appellant stood upon the letter of his legal right to make the arrest, without the existence of any necessity for the strict exercise of that right. He should therefore have given appellee the benefit of the strict letter of his right to be carried forthwith before a magistrate, and the only reason given for denying appellee this right was appellant's unwillingness to disturb the justice of the peace. Under the circumstances stated, this was not a sufficient excuse for subjecting appellee to the humiliation of being arrested and locked in jail.

"In 5 C. J. 421, it is said: 'But arrests at night and on Sunday, or the eve of Sunday, when it is hard to obtain bail, are deemed oppressive and unjustifiable, except in cases of pressing necessity.' "

In an able opinion (Ex parte Harvell [D. C.] 267 F. 997, 1003), Judge Connor said: "The imprisonment in jail of a citizen without warrant, without opportunity for a hearing or to give bail, is a serious matter, and while, in case of necessity, recognized by law, for the protection of the safety of the state and the due administration of its laws, an arrest may be made without warrant, the duty in every case is imperative upon the officer 'to forthwith carry the person arrested before the nearest judicial officer having jurisdiction to hear and determine the legality of such arrest,' to issue a warrant upon affidavit setting forth the substance of the offense charged and the substantial and material features thereof. Ex parte Van Hoven, Fed. Cas. No. 16,858. * * * "

In 25 C. J. 491 and 493 the general rule is stated as follows: "One making an arrest may be liable in an action for false imprisonment where he fails to take the person arrested before the officer designated in the warrant, or, if the arrest is made without warrant, to the nearest committing magistrate, or other officer designated by law. * * * Further he must bring his prisoner before the proper officer without a detention longer than is reasonably necessary. Orders from a superior do not excuse the arresting party from this duty, nor does delivery of the prisoner into the custody of another person; all those who take part in so detaining a person an unreasonable length of time are liable. * * * What is a reasonable time depends upon the facts of each case."

Generally it is a question for the jury as to what is "reasonable opportunity." 79 A. L. R. 13 and cases cited in note. Under the circumstances existing here, the arrested persons have a right to a reasonable opportunity to give bond, unless that right is waived, and that is all that the judge told the jury in his charge. It is true that there was some irrelevant matter in the judge's charge on this point in regard to what was contained in the ordinances of the city of Charleston, but it is not conceivable that these references to the ordinances of a different city could have possibly prejudiced the jury to the injury of the appellants, and they were of no effect as far as the rights of the parties to this case are concerned.

The judge's charge is to be considered as a whole, and when so considered it was more

than fair to the appellants. Courts will not look with favor upon such a course of action, on the part of police officers, as that pursued by Moran against the appellees. We do not mean to say that it is the duty of an arresting officer always to take an arrested person immediately in the presence of a committing magistrate, no matter what the circumstances of time and place attending the arrest may be. But the actions of the officer in this case were arbitrary and unjust. He insisted on imprisoning the appellees overnight when he could have taken the same action at the time of the arrest that he took the next morning, without any intervening happening, when he released them upon his own authority. He then accepted bail in an amount they could give, when the night before he asked for bail in an amount they could not give.

█ It is finally contended on behalf of the appellants that the damages awarded by the jury were excessive and that the judgments should be set aside for that reason. The power to correct an excessive verdict is vested in the trial court alone, and the federal appellate courts will not review its rulings on that point. Southern Ry.-Carolina Division v. Bennett, 233 U. S. 80, 34 S. Ct. 566, 58 L. Ed. 860; Spokane, P. & S. R. Co. v. Cole (C. C. A.) 54 F.(2d) 318; Kansas City S. R. Co. v. Pinson (C. C. A.) 61 F.(2d) 1001.

There was no error in the trial, and the judgments of the court below are, accordingly, affirmed.