14886

WESTBROOK v. HUTCHISON *ET AL.*

(3 S. E. (2d), 207)

*Messrs. Dunlap, Dunlap & Roddey,* for appellant,

*Messrs. Hart & Moss* and *B. J. White,* for respondents,

May 30, 1939.

The opinion of the Court was delivered by Mr. Justice Baker.

This is an action in which the appellant, a minor about 12 years of age, sought damages from the respondents, actual and punitive, for false imprisonment.

Paragraphs two and three of the complaint are as follows:

"2. That on the 4th day of July, 1937, at Rock Hill, County of York, State of South Carolina, the Defendants herein maliciously and with intent to injure the Plaintiff, and to extort from him a confession as to the theft of a sum

of money amounting to about Twenty-One and 25/100 ($21-.25) Dollars, the property of the Defendant, Miss Kate J. Hutchison, by persuasion and force compelling the Plaintiff, James Wylie Westbrook, to go with the two defendants, Miss Kate J. Hutchison, and Mrs. Eunice Hutchison, in an automobile operated by the defendant, Mrs. Eunice Hutchison, to the residence of the said defendant, Mrs. Kate J. Hutchison, and carried this plaintiff along with his younger brother, eight years of age, into the residence of the defendant, Mrs. Kate J. Hutchison, and to a room occupied by the defendant, the said Mrs. Kate J. Hutchison, and then and there held this plaintiff in custody for a period of at least half of an hour and restrained him of his liberty maliciously, wilfully and without any reasonable cause, and without any right or authority so to do and against the will of the Plaintiff, and was thereby prevented from attending the picture show or to join in any other playful matters for that period of time, and thereafter the Defendants maliciously and wilfully took the said Plaintiff from the said room and put him in the same automobile operated by the said defendant, Mrs. Eunice Hutchison, who was accompanied by the defendant, Miss Kate J. Hutchison, and drove him and his younger brother, the said Robert Westbrook, to the Highland Park Manufacturing Company, a cotton mill at least a mile from the said residence and from that point carried him and his said brother to the Aragon Cotton Mill, a distance of at least two and one-half miles from the residence above referred to, and then instead of returning the Plaintiff to his residence and delivering him to his parents he was required to leave the automobile at or near the corner of Trade Street and White Street in the city of Rock Hill, S. C., and there told that he could return to the picture show—this trip consuming about an hour.

"3. That while the said Plaintiff was held as above alleged in the residence and in the room each of the said Defendants conspiring together, aiding and abetting each other

tried to force from this Plaintiff—who is a young and inexperienced child, and was without the care and protection of his parents or anyone of mature age who could advise him—a confession that he committed the theft of the twenty-one and 25/100 ($21.25) Dollars, the property of the Defendant, Miss Kate J. Hutchison, and in keeping with the said conspiracy and the aiding and abetting of the defendant he was driven as above alleged to the two said cotton mills and in his presence the defendants, Miss Kate J. Hutchison and Mrs. Eunice Hutchison, acting individually and for the benefit of all other defendants tried again to force a confession by falsely stating in his presence to his brother, Edward Westbrook, Jr., that he, the plaintiff, had stated to them that he had given the money to his said brother, Edward Westbrook, Jr."

The answer, with the exception of a few minor admissions, was a general denial.

The cause first came on for trial before Honorable A. L. Gaston, Circuit Judge, and a jury, on the 6th day of May, 1938. At the conclusion of all of the testimony, respondents moved for a directed verdict as to both actual and punitive damages. The motion was granted as to punitive damages, and the action was then submitted to the jury solely on the question of actual damages, and when the jury was unable to agree, a mistrial was ordered by the Court. From Judge Gaston's order directing a verdict as to punitive damages, the appellant served notice of intention to appeal to this Court.

Subsequently, on the 5th day of December, 1938, the cause was again called for trial before Honorable C. C. Featherstone, presiding Judge, at which time respondents took the position that appellant was entitled to go to trial solely on the question of actual damages, in that the order of Judge Gaston directing a verdict as to punitive damages was the law of the case until reversed.

Judge Featherstone held that the order of Judge Gaston was binding on him, whereupon counsel for appellant an-

nounced that the appeal from Judge Gaston's order was abandoned, and the case then proceeded to trial solely upon the issue of actual damages.

A jury was empaneled and at the conclusion of appellant's testimony, respondents moved for a nonsuit upon the grounds: 1. That there was no testimony showing conspiracy; and 2, that there was not sufficient evidence of false imprisonment to submit the case to the jury.

The motion for nonsuit was granted by the presiding Judge, and appellant comes to this Court on exceptions to the ruling that the Court was bound by the order of Judge Gaston directing a verdict as to punitive damages in the former trial, in which there was a mistrial as to actual damages; and from the order of the trial Judge in the second trial granting a nonsuit as to actual damages.

In *Nixon Grocery Co. v. Spann et al.,* 108 S. C., 329, 338, 94 S. E., 531, 534, we find: " * * * It is well settled that one circuit judge cannot set aside or modify the orders of another, except in cases when the right to do so has been reserved to the succeeding judge, or when it is allowed by rule of court or statute."

In *Matheson et al. v. McCormac,* 187 S. C., 260, 196 S. E., 883, 884, it is stated: "That a decree from which no appeal is taken becomes the law of the case in all subsequent proceedings involving the same parties and the same subject-matter is the well-settled law in this state, and it is therefore unnecessary to enter upon any extended discussion of this postulate. There are numerous decisions of this court to this effect, among which are: *Kerchner v. Singletary,* 15 S. C., 535; *Hunter v. Ruff,* 47 S. C., 525, 25 S. E., 65, 58 Am. St. Rep., 907; *Virginia-Carolina Chemical Co. v. Hunter et al.,* 97 S. C., 31, 81 S. E., 190; *Bowling v. Mangum,* 122 S. C., 179, 115 S. E., 212."

See, also, *McLaurin v. Newton,* 183 S. C., 379, 191 S. E., 59.

From the foregoing authorities, it would appear to be beyond cavil that upon the second trial of the case the trial Judge was bound by the order of the trial Judge on the first trial, in which a verdict as to punitive damages was directed in favor of the respondents. Judge Featherstone did not have the power to reverse, revive, alter or amend the order of Judge Gaston. It was the law of the case until reversed and the order not having been reversed and the appeal therefrom having been abandoned, it became the law of the case. It was *res judicata* as to the issue of punitive damages, and we need not pursue the question further.

Where it is necessary for this Court to remand a case for a new trial, especially when the appeal is from an order of nonsuit or directed verdict, it is always best that this Court refrain, as nearly as possible, from discussing the testimony, and in the instant case it is not necessary that we refer to it in any great detail.

In *Barfield v. Coker & Co.,* 73 S. C., 181, 188, 53 S. E., 170, 173, the Court sad: " * * * Where one brings an action for false imprisonment, all that is necessary for him to allege and prove is that he has been unlawfully restrained of his liberty, and it is wholly immaterial to inquire whether the charge against him, and for which he has been arrested, is well or ill founded in fact. * * * "

Quoting from *Comer v. Knowles,* 17 Kan., 436: "False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone, or by acts alone, or by both, and be merely operating on the will of the individual, or by personal violence, or by both. It is not necessary that the individual be confined within a prison, or within walls, or that he be assaulted, or even touched. It is not necessary that there should be any injury done to the individual's person, or to his character, or reputation. Nor is it necessary that the wrongful act be committed with malice, or ill-will, or even with the slightest wrongful intention. Nor is it necessary

that the act be under color of any legal or judicial proceeding. All that is nceessary is, that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard."

There is testimony from which a reasonable inference can be drawn that the respondents were acting in concert. Appellant, a lad of less than 12 years of age, was called from a motion picture show to an automobile occupied by Mrs. W. C. Hutchison and Mrs. Eunice Hutchison, and when he got to the automobile, was told to get in, that "Kate wants to see you." He was driven to the Hutchison home. He was then directed to enter the Hutchison home, and to the room of Mrs. Kate J. Hutchison. Soon after getting therein, Mrs. Kate J. and Miss Kate J. Hutchison came in. He was in the room for about thirty minutes being questioned about some money which had been stolen from the home, and when he started to leave, Mrs. Kate J. Hutchison stopped him and said: "Jimmie, you step back up there; we are not through with you yet—step back on the hearth." He was kept there for a while longer with all of the respondents, except W. C. Hutchison, talking, and every now and then W. C. Hutchison would come in and go out. From there (the Hutchison home) appellant was driven to other points in the City of Rock Hill by Mrs. Eunice Hutchison and Miss Kate J. Hutchison, but we have already set forth sufficient of the testimony to require that the case be submitted to a jury. We have omitted any reference to that portion of the testimony tending to show that had not the issue of punitive damages been disposed of on the first trial, the trial Judge would have been fully warranted in also submitting to the jury this issue.

It was error to grant a nonsuit, as to actual damages, and on this ground, the order of the trial Judge granting the nonsuit is reversed, and the case is remanded for a new trial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

Mr. Justice Carter did not participate on account of illness.